## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF COLORADO

| | |
|---|---|
| DATA SCAPE LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>F5 NETWORKS, INC.,<br><br>    Defendants. | Case No. <u>1:19-cv-00064</u><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which plaintiff Data Scape Limited ("Plaintiff," "Data Scape") makes the following allegations against defendant F5 Networks, Inc. ("Defendant," "F5"):

## PARTIES

1.  Data Scape is a company organized under the laws of Ireland with its office located at Office 115, 4-5 Burton Hall Road, Sandyford, Dublin 18, Ireland.

2.  On information and belief, defendant F5 Networks, Inc. is a Washington corporation with a principal place of business at 401 Elliott Ave. West, Seattle, Washington 98119.

## JURISDICTION AND VENUE

3.  This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.  This Court has personal jurisdiction over F5 in this action because F5 has committed acts within the District of Colorado giving rise to this action and has established

minimum contacts with this forum such that the exercise of jurisdiction over F5 would not offend traditional notions of fair play and substantial justice.  F5, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

5.      Venue is proper in this district under 28 U.S.C. § 1400(b). F5 is registered to do business in Colorado, and upon information and belief, F5 has transacted business in the District of Colorado and has committed acts of direct and indirect infringement in the District of Colorado. F5 has a regular and established place of business in this District, including, e.g., an engineering location, employees, and other business. For example, F5 has a corporate office and engineering location in Boulder, Colorado, where it employs product marketing and engineering personnel.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 10,027,751

6.      Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

7.      Data Scape is the owner by assignment of United States Patent No. 10,027,751 ("the '751 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '751 Patent was duly and legally issued by the United States Patent and Trademark Office on July 17, 2018.  A true and correct copy of the '751 Patent is included as Exhibit A.

8.      Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '751 patent, and continues to do so.  By way of

illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, BIG-IP software and hardware, and all versions and variations thereof since the issuance of the '751 Patent ("Accused Instrumentalities").

9.     Defendant has directly infringed and continues to infringe the '751 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendant's customers.

10.     For example, the Accused Instrumentalities infringe Claim 1 of the '751 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

11.     The Accused Instrumentalities include "[a] communication apparatus configured to transmit data to an apparatus."  For example, the Accused Instrumentalities communicate configuration stored on one device (e.g. a BIG-IP appliance or hardware running BIG-IP Virtual Edition) to another device (e.g. BIG-IP appliance or hardware running BIG-IP Virtual Edition).  *See, e.g.*, "K13946: Troubleshooting ConfigSync and device service clustering issues (11.x - 13.x)", *available at* https://api-u.f5.com/support/kb-articles/K13946?pdf ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic."); "K7024: Overview of the ConfigSync process (9.x - 10.x)," *available at* https://api-

u.f5.com/support/kb-articles/K7024?pdf ("The ConfigSync process collects the configuration files and directories from one unit of a redundant pair into a single archive file, transmits the archive file to the peer unit, and installs the shared configuration data on the peer, overwriting the existing shared configuration on the peer.").

12.     The Accused Instrumentalities include a communication apparatus comprising "a hardware storage medium configured to store management information of data to be transferred to the apparatus." For example, a physical BIG-IP appliance includes a storage medium, e.g. a solid state disk, and a virtual appliance includes a storage medium, e.g. a disk in the underlying virtualization server.   The second storage medium is configured to store management information of data to be transferred. *See, e.g.*, Manual Chapter:     Managing     Configuration     Synchronization,     *available     at* https://support.f5.com/content/kb/en-us/products/big-ip_ltm/manuals/product/bigip-system-device-service-clustering-administration-13-0-0/5.html ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those applications.").

13.     The Accused Instrumentalities include a communication apparatus comprising "a communicator configured to communicate data with the apparatus." For example, in BIG-IP versions 11.x and above, the CMI communications channel is used to allow secure communication between BIG-IP devices. *See, e.g.*, K13946. In previous BIG-

IP versions, the SOAP protocol with HTTPS is used to communicate between the first and second apparatuses. *See, e.g.*, K7024.

14.     The Accused Instrumentalities include a communication apparatus comprising "a detector configured to detect whether the communication apparatus and the apparatus are connected." For example, the BIG-IP system automatically detects and monitors the status of each device in a configuration group. *See, e.g.*, *Managing Configuration Synchronization* ("At all times, the BIG-IP® system displays a specific sync status for each device group."); K7024 ("The auto-detect feature automatically detects configuration status and displays that status on all Configuration utility screens. The configsync state daemon (cssd) is used to check the status of each unit.").

15.     The Accused Instrumentalities include a communication apparatus comprising "an editor configured to select certain data to be transferred and to edit the management information based on the selection without regard to the connection of the communication apparatus and the apparatus." For example, the BIG-IP system permits synchronizing "some types of data on a global level… while syncing other data in a more granular way, on an individual application level to a subset of devices," which can be configured using the BIG-IP Configuration utility on the second apparatus. *Managing Configuration                         Synchronization.                    See                  also* https://deviousnetworks.blogspot.com/2017/03/big-ip-folders.html:



## Summary

Using the Sync-Only feature allows you to pick and choose what you want to synchronise amongst your BIG-IP systems fairly easily. This post did not delve too deeply, especially in regards to the other options available in the folder creation but hopefully provides enough high level insight to build upon. Consult a TMSH guide to check out some of the other options that may be useful for you.

16.    The Accused Instrumentalities include a communication apparatus comprising "a controller configured to control transfer of the selected data stored in the

communication apparatus to the apparatus via the communicator based on the management information edited by the editor when the detector detects that the communication apparatus and the apparatus are connected." For example, in automatic sync mode "a BIG-IP device in the device group automatically synchronizes its configuration data to the other members of the device group whenever its configuration data changes." *Managing Configuration Synchronization*. The synchronization is only performed on the data selected by the editor, and only when the detection determines that each other member of the device group is connected.

17.    The Accused Instrumentalities include a communication apparatus "wherein the controller is configured to compare the management information edited by the editor with management information of data stored in the apparatus." For example, "The BIG-IP system uses commit ID updates to determine which device group member has the latest configuration and is eligible to initiate a ConfigSync operation," *e.g.*, by comparing management information stored in the two BIG-IP systems. K13946.

18.    The Accused Instrumentalities include a controller configured to "determine a size of the selected data in the communication apparatus."  For example, the BIG-IP system determines whether the pending configuration changes are greater or less than the configured cache size value. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization,    *available    at*    https://support.f5.com/kb/en-us/products/big-ip_ltm/manuals/product/bigip-device-service-clustering-admin-11-6-0/5.html    ("[U]sing the default cache size value of 1024, if you make more than 1024 KB worth of incremental changes, the system performs a full synchronization operation. Using incremental

synchronization operations can reduce the per-device sync/load time for configuration changes.").

19.     The Accused Instrumentalities include a controller configured to "transmit data in the communication apparatus based on result of the comparison and the determination." For example, the controller only transmits updated configuration data if the local configuration data is the most recent change. *See, e.g.*, K13946 ("The BIG-IP system uses commit ID updates to determine which device group member has the latest configuration and is eligible to initiate a ConfigSync operation."). Furthermore, the controller determines whether or not incremental sync is available based on the determination of the size of the data to be transferred. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("[U]sing the default cache size value of 1024, if you make more than 1024 KB worth of incremental changes, the system performs a full synchronization operation. Using incremental synchronization operations can reduce the per-device sync/load time for configuration changes.").

20.     Defendant has had knowledge of the '751 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '751 Patent.

21.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '751 Patent.   Use of the Accused

Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '751 Patent.

22.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '751 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '751 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '751 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant  engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '751 Patent.  Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '751 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '751 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '751 Patent, in violation of 35 U.S.C. § 271(b).

23.     Defendant has also infringed, and continues to infringe, claims of the '751 Patent by offering to commercially distribute, commercially distributing, making, and/or

importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '751 Patent, and constitute a material part of the invention. Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '751 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '751 Patent, in violation of 35 U.S.C. § 271(c).

24.     As a result of Defendant's infringement of the '751 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,386,581

25.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

26.     Data Scape is the owner by assignment of United States Patent No. 8,386,581 ("the '581 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '581 Patent was duly and legally issued by the United States Patent and Trademark Office on February 26, 2013. A true and correct copy of the '581 Patent is included as Exhibit B.

27.     Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '581 patent, and continues to do so. By way of

illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, BIG-IP software and hardware, and all versions and variations thereof since the issuance of the '581 Patent ("Accused Instrumentalities").

28. Defendant has directly infringed and continues to infringe the '581 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendant's customers.

29. For example, the Accused Instrumentalities infringe Claim 1 of the '581 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

30. The Accused Instrumentalities include "[a] communication apparatus." For example, the Accused Instrumentalities communicate configuration stored on one device (e.g. a BIG-IP appliance or hardware running BIG-IP Virtual Edition) to another device (e.g. BIG-IP appliance or hardware running BIG-IP Virtual Edition). *See, e.g.*, "K13946: Troubleshooting ConfigSync and device service clustering issues (11.x - 13.x)", *available at* https://api-u.f5.com/support/kb-articles/K13946?pdf ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic."); "K7024: Overview of the ConfigSync process (9.x - 10.x)," *available at* https://api-u.f5.com/support/kb-articles/K7024?pdf ("The ConfigSync process collects the

configuration files and directories from one unit of a redundant pair into a single archive file, transmits the archive file to the peer unit, and installs the shared configuration data on the peer, overwriting the existing shared configuration on the peer.").

31.     The Accused Instrumentalities include "a storage unit configured to store content data to a storage medium." For example, a physical BIG-IP appliance includes a storage medium, e.g. a solid state disk, and a virtual appliance includes a storage medium, e.g. a disk in the underlying virtualization server.  The storage unit is configured to store configuration data to a storage medium. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization, *available at* https://support.f5.com/content/kb/en-us/products/big-ip_ltm/manuals/product/bigip-system-device-service-clustering-administration-13-0-0/5.html ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those applications."); *see also* Hardware Datasheet: BIG-IP System, *available at* https://www.f5.com/pdf/products/big-ip-platforms-datasheet.pdf  ("Memory:   512   GB DDR4 *** Hard Drive: 1x 1.6 TB Enterprise Class SSD").

32.     The Accused Instrumentalities include "a communication unit configured to communicate with an external apparatus." For example, in BIG-IP versions 11.x and above, the CMI communications channel is used to allow secure communication between

BIG-IP devices. *See, e.g.*, K13946. In previous BIG-IP versions, the SOAP protocol with HTTPS is used to communicate between the first and second apparatuses. *See, e.g.*, K7024.

33.     The Accused Instrumentalities include "a controller configured to edit a list so that content data is registered in the list." For example, the BIG-IP system includes a controller to edit the data to be synchronized to each device group and therefore to each external apparatus. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those applications."); *see also* K13946 ("The BIG-IP system uses commit ID updates to determine which device group member has the latest configuration and is eligible to initiate a ConfigSync operation."); https://deviousnetworks.blogspot.com/2017/03/big-ip-folders.html:







# Summary

Using the Sync-Only feature allows you to pick and choose what you want to synchronise amongst your BIG-IP systems fairly easily. This post did not delve too deeply, especially in regards to the other options available in the folder creation but hopefully provides enough high level insight to build upon. Consult a TMSH guide to check out some of the other options that may be useful for you.

34.     The Accused Instrumentalities include a controller configured "to uniquely associate the list with the external apparatus using a unique identification of the external apparatus." For example, the BIG-IP system associates the list of folders, device groups, or traffic groups with an external apparatus based on the unique identification properties, certificate, or other unique identifier of the external apparatus. *See, e.g.*, Manual Chapter: Introducing BIG-IP Device Service Clustering, *available at* https://support.f5.com/kb/en-us/products/big-ip_ltm/manuals/product/bigip-device-service-clustering-11-2-1/1.html ("Devices: A device is a physical or virtual BIG-IP system, as well as a member of a local

trust domain and a device group. Each device member has a set of unique identification properties that the BIG-IP® system generates. *** Device trust establishes trust relationships between BIG-IP devices on the network, through mutual certificate-based authentication. A trust domain is a collection of BIG-IP devices that trust one another and can therefore synchronize and fail over their BIG-IP configuration data, as well as exchange status and failover messages on a regular basis.").

35.     The Accused Instrumentalities include a controller configured "to extract the list associated with the external apparatus from a plurality of lists in the communication apparatus when the external apparatus is connected to the communication apparatus." For example, in automatic sync mode "a BIG-IP device in the device group automatically synchronizes its configuration data to the other members of the device group whenever its configuration data changes." Manual Chapter: Managing Configuration Synchronization. For each external apparatus, this synchronization only includes the data associated with the device group(s) associated with that apparatus, corresponding to the list of content to be synchronized to that apparatus. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those applications."); *see also* K13946 ("The BIG-IP system uses commit ID updates to determine which device

group member has the latest configuration and is eligible to initiate a ConfigSync operation."); https://deviousnetworks.blogspot.com/2017/03/big-ip-folders.html:



36.      The Accused Instrumentalities include a controller configured "to control transferring of content data registered in the extracted list to the external apparatus." For example, the controller transmits updated configuration data if the local configuration data is the most recent change. *See, e.g.*, K13946 ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic."); K7024 ("The ConfigSync process collects the configuration files and directories from one unit of a redundant pair into a single archive file, transmits the archive file to the peer unit, and installs the shared configuration data on the peer, overwriting the existing shared configuration on the peer.").

37.      Defendant has had knowledge of the '581 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '581 Patent.

38.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '581 Patent.   Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '581 Patent.

39.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '581 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '581 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '581 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant   engaged   in   such   inducement   to   promote   the   sales   of   the   Accused Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '581 Patent.  Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '581 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '581 Patent. Accordingly, Defendant

has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '581 Patent, in violation of 35 U.S.C. § 271(b).

40.     Defendant has also infringed, and continues to infringe, claims of the '581 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '581 Patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '581 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '581 Patent, in violation of 35 U.S.C. § 271(c).

41.     For similar reasons, Defendant also infringes the '581 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '581 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate BIG-IP appliances) and software (e.g., BIG-IP software) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple BIG-IP appliances into an infringing system) outside of the United States.

42.     Defendants also indirectly infringe the '581 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '581 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '581 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate BIG-IP appliances) and software (e.g., BIG-IP software) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to users in, e.g., combining multiple BIG-IP appliances into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

43.     As a result of Defendant's infringement of the '581 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for

Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT III

### INFRINGEMENT OF U.S. PATENT NO. 7,720,929

44.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

45.     Data Scape is the owner by assignment of United States Patent No. 7,720,929 ("the '929 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '929 Patent was duly and legally issued by the United States Patent and Trademark Office on May 18, 2010.  A true and correct copy of the '929 Patent is included as Exhibit C.

46.     Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '929 patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, BIG-IP software and hardware, and all versions and variations thereof since the issuance of the '929 Patent ("Accused Instrumentalities").

47.     Defendant has directly infringed and continues to infringe the '929 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendant's customers.

48. For example, the Accused Instrumentalities infringe Claim 1 of the '929 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

49. The Accused Instrumentalities include "[a] communication system including a first apparatus having a first storage medium, and a second apparatus." For example, the Accused Instrumentalities communicate configuration stored on one device (e.g. a BIG-IP appliance or hardware running BIG-IP Virtual Edition) to another device (e.g. BIG-IP appliance or hardware running BIG-IP Virtual Edition). *See, e.g.*, "K13946: Troubleshooting ConfigSync and device service clustering issues (11.x - 13.x)", *available at* https://api-u.f5.com/support/kb-articles/K13946?pdf ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic."); "K7024: Overview of the ConfigSync process (9.x - 10.x)," *available at* https://api-u.f5.com/support/kb-articles/K7024?pdf ("The ConfigSync process collects the configuration files and directories from one unit of a redundant pair into a single archive file, transmits the archive file to the peer unit, and installs the shared configuration data on the peer, overwriting the existing shared configuration on the peer.").

50. The Accused Instrumentalities include a second apparatus comprising "a second storage medium configured to store management information of data to be transferred to said first storage medium." For example, a physical BIG-IP appliance includes a storage medium, e.g. a solid state disk, and a virtual appliance includes a storage medium, e.g. a disk in the underlying virtualization server. The second storage medium is

configured to store management information of data to be transferred. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization, *available at* https://support.f5.com/content/kb/en-us/products/big-ip_ltm/manuals/product/bigip-system-device-service-clustering-administration-13-0-0/5.html ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those applications.").

51.     The Accused Instrumentalities include a second apparatus comprising "a communicator configured to communicate with said first apparatus." For example, in BIG-IP versions 11.x and above, the CMI communications channel is used to allow secure communication between BIG-IP devices. *See, e.g.*, K13946. In previous BIG-IP versions, the SOAP protocol with HTTPS is used to communicate between the first and second apparatuses. *See, e.g.*, K7024.

52.     The Accused Instrumentalities include a second apparatus comprising "a detector configured to detect whether said first apparatus and a second apparatus are connected." For example, the BIG-IP system automatically detects and monitors the status of each device in a configuration group. *See, e.g.*, *Managing Configuration Synchronization* ("At all times, the BIG-IP® system displays a specific sync status for each device group."); K7024 ("The auto-detect feature automatically detects configuration

status and displays that status on all Configuration utility screens. The configsync state daemon (cssd) is used to check the status of each unit.").

53.     The Accused Instrumentalities include a second apparatus comprising "an editor configured to select certain data to be transferred and to edit said management information based on said selection without regard to the connection of said first apparatus." For example, the BIG-IP system permits synchronizing "some types of data on a global level… while syncing other data in a more granular way, on an individual application level to a subset of devices," which can be configured using the BIG-IP Configuration utility on the second apparatus. *Managing Configuration Synchronization*. *See also* https://deviousnetworks.blogspot.com/2017/03/big-ip-folders.html:





# Summary

Using the Sync-Only feature allows you to pick and choose what you want to synchronise amongst your BIG-IP systems fairly easily. This post did not delve too deeply, especially in regards to the other options available in the folder creation but hopefully provides enough high level insight to build upon. Consult a TMSH guide to check out some of the other options that may be useful for you.

54.     The Accused Instrumentalities include a second apparatus comprising "a controller configured to control transfer of the selected data stored in said second apparatus to said first apparatus via said communicator based on said management information edited by said editor when said detector detects that said first apparatus and said second apparatus are connected." For example, in automatic sync mode "a BIG-IP device in the device group automatically synchronizes its configuration data to the other members of the device group whenever its configuration data changes." *Managing Configuration Synchronization*. The

synchronization is only performed on the data selected by the editor, and only when the detection determines that each other member of the device group is connected.

55.     The Accused Instrumentalities include a second apparatus "wherein said controller is configured to compare said management information edited by said editor with management information of data stored in said first storage medium and to transmit data in said second apparatus based on result of the comparison." For example, "The BIG-IP system uses commit ID updates to determine which device group member has the latest configuration and is eligible to initiate a ConfigSync operation," and only transmits data from the device with the latest configuration, *i.e.*, based on the result of comparing management information stored in the two BIG-IP systems. K13946.

56.     Defendant has had knowledge of the '929 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '929 Patent.

57.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '929 Patent.   Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '929 Patent.

58.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings

among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '929 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '929 Patent. Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '929 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Defendant  engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '929 Patent. Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '929 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '929 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '929 Patent, in violation of 35 U.S.C. § 271(b).

59.     Defendant has also infringed, and continues to infringe, claims of the '929 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '929 Patent, and constitute a material part of the invention. Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '929 Patent, not a staple article, and not a commodity

of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '929 Patent, in violation of 35 U.S.C. § 271(c).

60.     For similar reasons, Defendant also infringes the '929 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '929 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate BIG-IP appliances) and software (e.g., BIG-IP software) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple BIG-IP appliances into an infringing system) outside of the United States.

61.     Defendants also indirectly infringe the '929 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '929 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '929 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are

designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate BIG-IP appliances) and software (e.g., BIG-IP software) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to users in, e.g., combining multiple BIG-IP appliances into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

62.     As a result of Defendant's infringement of the '929 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 7,617,537

63.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

64.     Data Scape is the owner by assignment of United States Patent No. 7,617,537 ("the '537 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '537 Patent was duly and legally issued

by the United States Patent and Trademark Office on November 10, 2009. A true and correct copy of the '537 Patent is included as Exhibit D.

65.     Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '537 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, BIG-IP software and hardware, and all versions 11.x and later and all variations thereof since the issuance of the '537 Patent ("Accused Instrumentalities").

66.     Defendant has directly infringed and continues to infringe the '537 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendant's customers.

67.     For example, the Accused Instrumentalities infringe Claim 43 of the '537 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

68.     The Accused Instrumentalities include "[a] computer readable storage medium encoded with computer program instructions executable by a computer to implement a method of transferring content data to a first apparatus from a second apparatus." For example, the Accused Instrumentalities communicate configuration stored on one device (e.g. a BIG-IP appliance or hardware running BIG-IP Virtual Edition) to another device (e.g. BIG-IP appliance or hardware running BIG-IP Virtual Edition). *See,*

*e.g.*, "K13946: Troubleshooting ConfigSync and device service clustering issues (11.x -

13.x)", *available at* https://api-u.f5.com/support/kb-articles/K13946?pdf ("ConfigSync is

a high-availability feature that synchronizes configuration changes from one BIG-IP device

to other devices in a device group. This feature ensures that the BIG-IP device group

members maintain the same configuration data and work in tandem to more efficiently

process application traffic.").

69.     The Accused Instrumentalities include instructions that "judge whether said

first apparatus and said second apparatus are connected." For example, the BIG-IP system

automatically detects and monitors the status of each device in a configuration group. *See,*

*e.g.*, *Managing Configuration Synchronization* ("At all times, the BIG-IP® system

displays a specific sync status for each device group."); K7024 ("The auto-detect feature

automatically detects configuration status and displays that status on all Configuration

utility screens. The configsync state daemon (cssd) is used to check the status of each

unit.").

70.     The Accused Instrumentalities include instructions that "compare, upon

judging that said first apparatus and said second apparatus are connected, an identifier of

said first apparatus with a corresponding identifier in said second apparatus." For example,

the BIG-IP system identifies unique identification properties, a certificate, or another

unique identifier of the first apparatus. *See, e.g.*, Manual Chapter: Introducing BIG-IP

Device Service Clustering, *available at* https://support.f5.com/kb/en-us/products/big-

ip_ltm/manuals/product/bigip-device-service-clustering-11-2-1/1.html     ("Devices:    A

device is a physical or virtual BIG-IP system, as well as a member of a local trust domain

and a device group. Each device member has a set of unique identification properties that

the BIG-IP® system generates. *** Device trust establishes trust relationships between BIG-IP devices on the network, through mutual certificate-based authentication. A trust domain is a collection of BIG-IP devices that trust one another and can therefore synchronize and fail over their BIG-IP configuration data, as well as exchange status and failover messages on a regular basis.").

71.     The Accused Instrumentalities include instructions that "compare, when said identifier of said first apparatus corresponds to said identifier stored in said second apparatus, a first list of content data of said first apparatus and a second list of content data of said second apparatus." For example, the BIG-IP system determines the data to be synchronized to the first apparatus based on the ConfigSync configuration and the list of configuration files/folders on each device. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those applications."); *see also* K13946 ("The BIG-IP system uses commit ID updates to determine which device group member has the latest configuration and is eligible to initiate a ConfigSync operation."); https://deviousnetworks.blogspot.com/2017/03/big-ip-folders.html:



# Summary

Using the Sync-Only feature allows you to pick and choose what you want to synchronise amongst your BIG-IP systems fairly easily. This post did not delve too deeply, especially in regards to the other options available in the folder creation but hopefully provides enough high level insight to build upon. Consult a TMSH guide to check out some of the other options that may be useful for you.

72.     The Accused Instrumentalities include instructions that "transfer first content data, from the second apparatus to the first apparatus, which is registered in said

second list and is not registered in said first list." For example, the controller transmits updated configuration data if the local configuration data is the most recent change. See, e.g., K13946 ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic.").

73.     The Accused Instrumentalities include instructions that "delete second content data, from the first apparatus, which is registered in said first list and is not registered in said second list." For example, the 11.x and later versions of BIG-IP synchronize deletions as well as changes, *e.g.* delete files from the first apparatus when those files have been deleted from the second apparatus. *See, e.g.*, https://support.f5.com/csp/article/K16592 ("To work around this issue, you can synchronize the configuration just after deleting the pool member and node, before recreating the pool member. To do so, perform the following procedure: *** 6. Select the check box next to the node with the same name and click Delete. *** 9. Click Sync. 10. If the ConfigSync was successful, you may now recreate the pool member."); "K7024: Overview of the ConfigSync process (9.x - 10.x)," *available at* https://api-u.f5.com/support/kb-articles/K7024?pdf ("Also, file deletions are not propagated; if a file in a synchronized directory is deleted, the corresponding file on the peer unit is not deleted by the ConfigSync process."); K13946 (warning regarding non-propagations of deletions removed from corresponding documentation for 11.x and following); "Config Sync and SSL Certificates," http://www.thef5guy.com/blog/2010/02/config-sync/ (describing

inability of version 10.x to synchronize file deletions; with comment "In 11.3 this behavior is changed. SSL cert can be delete when sync.").

74.     Defendant has had knowledge of the '537 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '537 Patent.

75.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '537 Patent.   Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '537 Patent.

76.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '537 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '537 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '537 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant   engaged  in  such  inducement  to  promote  the  sales  of  the  Accused

Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '537 Patent. Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '537 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '537 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '537 Patent, in violation of 35 U.S.C. § 271(b).

77.     Defendant has also infringed, and continues to infringe, claims of the '537 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '537 Patent, and constitute a material part of the invention. Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '537 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '537 Patent, in violation of 35 U.S.C. § 271(c).

78.     As a result of Defendant's infringement of the '537 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 9,715,893

79.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

80.     Data Scape is the owner by assignment of United States Patent No. 9,715,893 ("the '893 Patent"), entitled "Recording Apparatus, Server Apparatus, Recording Method, Program and Storage Medium." The '893 Patent was duly and legally issued by the United States Patent and Trademark Office on July 25, 2017. A true and correct copy of the '893 Patent is included as Exhibit E.

81.     Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '893 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, BIG-IP software and hardware, and all versions and variations thereof since the issuance of the '893 Patent ("Accused Instrumentalities").

82.     Defendant has directly infringed and continues to infringe the '893 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendant's customers.

83.     For example, the Accused Instrumentalities infringe Claim 1 of the '893 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

84.     The Accused Instrumentalities include "[a] non-transitory computer-readable storage medium storing instructions which, when executed by a computer, cause the computer to perform a method of an information processing apparatus for transferring data." For example, the Accused Instrumentalities transfer configuration data stored on one device (e.g. a BIG-IP appliance or hardware running BIG-IP Virtual Edition) to another device (e.g. BIG-IP appliance or hardware running BIG-IP Virtual Edition). *See, e.g.*, "K13946: Troubleshooting ConfigSync and device service clustering issues (11.x - 13.x)", *available at* https://api-u.f5.com/support/kb-articles/K13946?pdf ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic.").

85.     The Accused Instrumentalities include instructions for "automatically reading first management data from a first storage medium, the first management data identifying files of source data stored on the first storage medium." For example, the BIG-IP system identifies, using management data, files stored on the first storage medium that should be transferred to the second storage medium. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("You can sync some types of data on a global level across all BIG-IP devices, while syncing other data in a more granular way, on an individual application level to a subset of devices. For example, you can set up a large device group to sync resource and policy data (such as iRules® and profiles) among all BIG-IP devices in a data center, while setting up a smaller device group for syncing application-specific data (such as virtual IP addresses) between the specific devices that are delivering those

applications."); *see also* K13946 ("The BIG-IP system uses commit ID updates to determine which device group member has the latest configuration and is eligible to initiate a ConfigSync operation."); https://deviousnetworks.blogspot.com/2017/03/big-ip-folders.html:







# Summary

Using the Sync-Only feature allows you to pick and choose what you want to synchronise amongst your BIG-IP systems fairly easily. This post did not delve too deeply, especially in regards to the other options available in the folder creation but hopefully provides enough high level insight to build upon. Consult a TMSH guide to check out some of the other options that may be useful for you.

86.    The Accused Instrumentalities include instructions for "automatically identifying, by the computer, one of the files of source data based on the first management data and second management data, the second management data identifying files of transferred data stored on a second storage medium, the one of the files of source data being absent from the second storage medium." For example, the BIG-IP system uses management data to identify files that do not exist on the target system, e.g. because the systems have not been synchronized before or because an incremental sync is being performed. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("When

you enable incremental sync, the BIG-IP system syncs only the changes that are more recent than those on the target device. The BIG-IP system accomplishes this by comparing the configuration data on each target device with the configuration data on the source device and then syncs the delta of each target-source pair. F5 networks recommends that you use incremental sync, for optimal performance. The incremental sync feature is a performance improvement feature and is the default value. You can use incremental sync with either automatic or manual sync operations.").

87.    The Accused Instrumentalities include instructions for "automatically transferring the one of the files of source data to the second storage medium, the one of the files of source data being transferred becoming one of the files of transferred data." For example, the BIG-IP system automatically transfers all or some of the configuration files to the second storage medium. *See, e.g.*, K13964 ("ConfigSync is a high-availability feature that synchronizes configuration changes from one BIG-IP device to other devices in a device group. This feature ensures that the BIG-IP device group members maintain the same configuration data and work in tandem to more efficiently process application traffic."); K7024 ("The auto-detect feature automatically detects configuration status and displays that status on all Configuration utility screens. The configsync state daemon (cssd) is used to check the status of each unit.").

88.    The Accused Instrumentalities include instructions for "automatically displaying transferring status of the one of the files of source data by a symbolic figure." For example, the BIG-IP system displays transfer status of the configuration files. *See, e.g.*, Manual Chapter: Managing Configuration Synchronization ("At all times, the BIG-IP®

system displays a specific sync status for each device group. *** Syncing … A sync operation is in progress.").

89.     Defendant has had knowledge of the '893 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '893 Patent.

90.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '893 Patent.  Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '893 Patent.

91.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '893 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '893 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '893 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant    engaged  in   such  inducement  to  promote  the  sales  of  the  Accused

Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '893 Patent.  Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '893 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '893 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '893 Patent, in violation of 35 U.S.C. § 271(b).

92.    Defendant has also infringed, and continues to infringe, claims of the '893 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '893 Patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '893 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '893 Patent, in violation of 35 U.S.C. § 271(c).

93.    For similar reasons, Defendant also infringes the '893 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components

outside of the United States in a manner that would infringe the '893 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate BIG-IP appliances) and software (e.g., BIG-IP software) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple BIG-IP appliances into an infringing system) outside of the United States.

94.      Defendants also indirectly infringe the '893 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '893 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '893 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate BIG-IP appliances) and software (e.g., BIG-IP software) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such

components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to users in, e.g., combining multiple BIG-IP appliances into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

95.    As a result of Defendant's infringement of the '893 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Data Scape respectfully requests that this Court enter:

a.    A judgment in favor of Plaintiff that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '751 Patent, the '581 Patent, the '929 Patent, the '537 Patent, and the '893 Patent (collectively, "asserted patents");

b.    A permanent injunction prohibiting Defendant from further acts of infringement of the asserted patents;

c.    A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

d.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Data Scape, including without limitation, prejudgment and post-judgment interest;

e.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

f.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  January 9, 2019

Respectfully Submitted,

/s/ *Eric B. Fenster*

**Eric B. Fenster**
Eric B. Fenster, LLC
P.O. Box 44011
Denver, CO 80201
Telephone: 720-943-3739
FAX: 720-255-0377
Email: eric@fensterlaw.net
*Attorney for Plaintiff*

Marc A. Fenster (CA SBN 181067)
Reza Mirzaie (CA SBN 246953)
Brian D. Ledahl (CA SBN 186579)
Paul Kroeger (CA SBN 229074)
C. Jay Chung (CA SBN 252794)
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
mfenster@raklaw.com
rmirzaie@raklaw.com
bledahl@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

Eric B. Fenster (CO Atty Reg # 33264)
**ERIC B. FENSTER, LLC**
1522 Blake Street, Suite 200
Denver, CO 80202

(303) 921-3530
Eric@fensterlaw.net

***Attorneys for Plaintiff Data Scape Limited***

Respectfully Submitted,

 /s/ *Eric B. Fenster*

**Eric B. Fenster**
Eric B. Fenster, LLC
P.O. Box 44011
Denver, CO 80201
Telephone: 720-943-3739
FAX: 720-255-0377
Email: eric@fensterlaw.net
*Attorney for Plaintiff*

**RUSS AUGUST & KABAT**
12424 Wilshire Blvd., 12th Floor,
Los Angeles, CA 90025
Telephone: 310-979-8251

Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com

*Attorneys for Plaintiff*
*REALTIME ADAPTIVE STREAMING LLC*